**KBT CORPORATION, INC. and W. Cody Anderson, Plaintiffs,**

v.

**CERIDIAN CORPORATION and Arbitron Company, Defendants.**

Civil Action No. 96–8221.

United States District Court, E.D. Pennsylvania.

June 2, 1997.

Charles W. Bowser, Luther E. Weaver, Bowser & Weaver, P.C., Philadelphia, PA, for Plaintiffs.

James A. Young, Mauro M. Wolfe, Christie, Pabarue, Mortensen and Young, Philadelphia, PA, for Defendants.

## MEMORANDUM

JOYNER, District Judge.

This lawsuit was filed on November 12, 1996, in the Court of Common Pleas of Philadelphia County, and was removed to this Court pursuant to a Joint Notice of Removal filed one month later. Subject matter jurisdiction is proper under 28 U.S.C. § 1332. Before the Court is Defendants' Motion to Dismiss Pursuant to Rules 12(b)(6), 9(b) and 9(g) of the Federal Rules of Civil Procedure, or Alternatively, Motion for More Definite Statement Pursuant to Rules 9(f), 9(g) and 12(e) of the Federal Rules of Civil Procedure, and Motion to Dismiss Plaintiffs' Claim for Punitive Damages (the "Motion to Dismiss"). For the following reasons, the Motion to Dismiss is granted in part and denied in part.

## BACKGROUND

At all times relevant to this action, Plaintiff W. Cody Anderson ("Anderson") was the sole shareholder of Plaintiff KBT Communications, Inc. ("KBT"), a Pennsylvania corporation with its principal place of business in Philadelphia. KBT, in turn, owned WHAT–AM ("WHAT"), a radio broadcasting station with a listening audience in the Philadelphia metropolitan area.[1] Plaintiffs describe

---

1. WHAT's listening audience allegedly includes not just Philadelphia County, but Montgomery County, Chester County and Delaware County in Pennsylvania, and the cities of Camden and Cherry Hill in New Jersey. For simplicity's sake,

WHAT as "ethnically oriented in that its broadcasting and programming are primarily directed to the ethnic tastes, desires and preferences of the African–American radio listening audience in [Philadelphia]." Compl., ¶ 9.

Defendant Ceridian Corporation ("Ceridian") was at all times relevant to this action a Delaware corporation having its principal place of business in Minnesota. Defendant Arbitron Company ("Arbitron") was a Maryland corporation having its principal places of business in New York and Maryland. According to Plaintiffs, Arbitron merged into and became a part of Ceridian on June 27, 1994. Plaintiffs nonetheless name both Ceridian and Arbitron as parties, thus we will use the plural "Defendants" throughout this Memorandum.

Plaintiffs allege the following facts, which must be taken as true for present purposes. KBT derives its income by selling WHAT's air time to individuals, corporations and organizations wishing to advertise on the station. Defendants conduct surveys to determine the habits, trends and compositions of radio listening audiences in particular markets. The results of the surveys are published in quarterly reports that Defendants sell to advertisers and advertising agencies across the country. Defendants have achieved virtual "monopoly status within the industry with respect to the content of said reports" as "almost 90% of all advertising purchases are placed based upon the rankings and ratings of [Defendants'] reports." Compl., ¶¶ 15, 16.

Defendants gather information for their surveys by employing a method known as the "diary method" whereby individuals make written notations of their listening habits throughout the day. This method, however, has been "well-known and admitted by the defendants for many years ... [and] scientifically confirmed to be extremely biased and inaccurate in reflecting the habits of the African–American listening audience." Compl., ¶ 22. In fact, in the early 1970's, Defendants admitted as much in an out-of-court settlement of a lawsuit asserting this very claim. As part of this settlement, Defendants

agreed to begin gathering information for their surveys through telephone polling. Under this methodology, stations whose programming was geared towards the African–American community "rose to top positions within their markets." Compl., ¶ 24. After several years, however, Defendants reverted to the diary method and stations such as and including WHAT again dropped in their respective rankings. These ratings declines had a direct and negative impact on the amount of advertising time purchased from WHAT and therefore on the income earned by KBT.

Thus, in this action, Plaintiffs claim that Defendants have compiled surveys using a method they knew to be biased and unreliable, and have therefore knowingly published false and misleading information regarding the listening trends and patterns of Philadelphia's African–American community generally and of WHAT's listening audience in particular. Plaintiffs seek damages for their alleged lost advertising revenue under five Pennsylvania common law theories: trade disparagement, intentional interference with prospective business relationships, interference with business relationships, fraud, and negligence. Plaintiffs also assert a separate claim for punitive damages. We now decide whether Plaintiffs have stated claims upon which relief may be granted.

## DISCUSSION

### Standard for Motion to Dismiss

In considering a Rule 12(b)(6) motion, a court must primarily consider the allegations contained in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993). The Court must accept as true all of the allegations in the pleadings and must give the plaintiff the benefit of every favorable inference that can be drawn from those allegations. *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir.1991); *Markow-*

however, we will simply refer to this area throughout this Memorandum as Philadelphia.

*itz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990). A complaint is properly dismissed only if it appears certain that the plaintiff cannot prove any set of facts in support of its claim which would entitle it to relief. *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir.1988).

### Plaintiff Anderson's Claims

■ Defendants move to dismiss all of Anderson's claims because he claims only damages that are derivative of harm to KBT. It is well-settled that a shareholder, director, officer or employee does not have standing as an individual to bring an action against third parties for damages that are derivative of harm to the corporation. *Temp–Way Corp. v. Continental Bank*, 139 B.R. 299, 316–17 (E.D.Pa.), *aff'd*, 981 F.2d 1248 (3d Cir.1992); *Chrysler Credit Corp. v. B.J.M., Jr., Inc.*, 834 F.Supp. 813, 838 (E.D.Pa.1993). Plaintiffs respond that Anderson's claims fall within the exception that allows an individual to recover for an injury that is separate and distinct from that incurred by the corporation. *See Temp–Way Corp.*, 139 B.R. at 317; *eds Adjusters, Inc. v. Computer Sciences Corp.*, 818 F.Supp. 120, 121 (E.D.Pa.1993).

■ We are not persuaded by either of Plaintiffs' two arguments that Anderson's claims fall within this exception. Plaintiffs argue first that Anderson has "suffered economic injury directly to himself which is separate and distinct" because he was at all relevant points KBT's only stockholder. Pls.' Mem. at 10. Plaintiffs cite no authority for this proposition, however, nor is logic in their favor. That Anderson was KBT's sole stockholder means simply that he was the only person to suffer harm derivative of KBT's, not that this harm was in any way separate or distinct from that of the corporation. Plaintiffs argue next that Defendants have harmed Anderson's "status and reputation in the radio industry." *Id.* Nothing in the Complaint suggests that Anderson asserts such a claim, however, or seeks to recover for any such injuries. Anderson's claims as they now stand are plainly derivative and must be dismissed accordingly. We turn now to KBT's claims.

### Count One: Trade Disparagement

■ In Pennsylvania, a commercially disparaging statement is defined as one "which is intended by its publisher to be understood or which is reasonably understood to cast doubt upon the existence or extent of another's property in land, chattels or intangible things, or upon their quality ... if the matter is so understood by its recipient." *Menefee v. Columbia Broadcasting Sys., Inc.*, 458 Pa. 46, 329 A.2d 216, 220 (1974) (quoting Restatement of Torts § 629 (1938)); *see also Guardian Life Insurance Company of America v. American Guardian Life Assurance Company*, 943 F.Supp. 509, 526 (E.D.Pa.1996) (quoting same). To state a claim for trade disparagement, a plaintiff must allege 1) a disparaging statement of fact that is untrue or a disparaging statement of opinion that is incorrect; 2) that no privilege attaches to the statement; and 3) that the plaintiff suffered a direct pecuniary loss as a result of the disparagement. *U.S. Healthcare v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 924 (3d Cir.1990).

### A. Disparaging Statements

KBT does not plead any allegedly disparaging statements with particularity, but merely avers that:

> The defendants did knowingly and wilfully publish as true, false and misleading disparaging statements with respect to plaintiffs' Station, to wit: that the level and frequency of listeners of plaintiffs' station were extremely low in comparison to other radio stations operating in [Philadelphia], when in truth and in fact such was not the case.

Compl., ¶ 32. This paragraph does not allege any specific statements, but appears rather to summarize the conclusions one draws from the information published in Defendants' reports. Nonetheless, Defendants do not contest the sufficiency of the Complaint in this regard, and accept as true for present purposes the allegation that they have wilfully made numerous (though unspecified) false statements of purported fact relating to WHAT's listening audience. We assume that such an allegation is sufficient under

liberal notice pleading rules and proceed with our analysis.

Defendants argue that the alleged statements are not disparaging as a matter of law because they describe the popularity of WHAT's programming, not its quality. Defendants emphasize the language from *Menefee* quoted above ("the existence or extent of another's property in land, chattels or intangible things, or upon their *quality* "), and cite *Menefee, Testing Systems, Inc. v. Magnaflux Corp.*, 251 F.Supp. 286 (E.D.Pa.1966), and *The American Heritage Dictionary of the English Language* to illustrate that "popularity is not synonymous with quality." Defs.' Mem. at 10.

■ KBT has clearly pled statements that are commercially disparaging under Pennsylvania law. First, in *Menefee*, the statement held to be disparaging was that the plaintiff radio talk show host had been fired " 'because of poor ratings garnered by his nighttime talk show.' " 329 A.2d at 217. Defendants attempt to distinguish the case by noting that the plaintiff in *Menefee* alleged that the defendants had falsely conveyed that he was "unable" and "incapable" of earning satisfactory ratings. The *Menefee* court did not emphasize the precise wording of the plaintiff's allegations, however, and KBT could just as easily have framed its allegations in a similar manner in this case. *See also Swift Bros. v. Swift & Sons, Inc.*, 921 F.Supp. 267, 270 (E.D.Pa. 1995) (assuming statement that plaintiff "had retired or moved to Chicago and that [his business] was no longer in existence" to be disparaging).

■ We are also persuaded by the policy underlying the tort. Trade disparagement is designed to compensate a vendor for pecuniary loss incurred as a result of slurs affecting the marketability of his goods. *Zerpol Corp. v. DMP Corp.*, 561 F.Supp. 404, 408 (E.D.Pa. 1983); *see also Swift Bros.*, 921 F.Supp. at 276 ("a claim of commercial disparagement emphasizes the direct harm to the plaintiff's reputation (and hence sales) caused by the alleged false statement"). Here, the marketability of KBT's product—WHAT's air time—is plainly affected by statements purporting to report WHAT's ratings. Indeed,

from an advertiser's perspective, the quality of WHAT's air time is synonymous with WHAT's popularity because the value of the station's time is determined by the number of listeners. Thus, in the marketability sense, statements that falsely underreport a station's ratings clearly cast doubt on the quality of the station's time. We therefore conclude that Plaintiff has adequately pled commercially disparaging statements.

### B. Privilege

Defendants claim that KBT has failed to allege that the challenged statements are not privileged. They contend further that the statements are covered by a conditional privilege because Defendants are "in the business [of] providing audience listening reports to licensed subscribers." Defs.' Mem. at 12. KBT concedes that the word "privilege" does not appear in any allegation, but argues that it has " 'set forth sufficient information to outline [this element] of [its] claim or to permit inferences to be drawn that [this element exists].' " *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993) (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 340 (2d ed.1990)).

■ A conditional privilege attaches to a commercially disparaging statement when the statement involves some interest of the person who publishes it, some interest of the person to whom it is published or some other third person, or a recognized interest of the public. *Guardian Life Ins. Co.*, 943 F.Supp. at 527; *Sugarman v. RCA Corp.*, 639 F.Supp. 780, 787 (M.D.Pa.1985). Once a defendant has shown a particular communication to be conditionally privileged, the burden shifts to the plaintiff to show an abuse of that privilege. *Guardian Life Ins. Co.*, 943 F.Supp. at 527 (citations omitted). Abuse is indicated when the publication is the result of malice, i.e. "a wrongful act done intentionally or without excuse or generated from reckless or wanton disregard of another's rights." *Id.* (citations omitted); *see also Zerpol Corp.*, 561 F.Supp. at 409 (listing as fourth element of trade libel claim that "the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity").

In this case, KBT alleges that Defendants published reports based on data they knew to have been complied in an unreliable and racially biased manner. KBT alleges further that Defendants wilfully published such misleading information for the express purpose of under-reporting the extent of WHAT's listening audience. Even assuming that Defendants' statements enjoy a conditional privilege, these allegations plainly state KBT's claim that Defendants acted with malice in publishing the reports. *See* Compl., ¶ 34. KBT has therefore adequately pled that no privilege attaches to the allegedly disparaging statements. *See U.S. Healthcare,* 898 F.2d at 924.

#### C. Special Damages

To state a claim for trade disparagement, KBT must plead special damages. *See Swift Bros.,* 921 F.Supp. at 276; *Forum Publications, Inc. v. P.T. Publishers, Inc.,* 700 F.Supp. 236, 243 (E.D.Pa.1988); Fed. R.Civ.P. 9(g) ("When items of special damage are claimed, they shall be specifically stated."). As the court in *Forum Publications* explained, even under the liberal federal rules of pleading,

> ' "[i]t [is] . . . necessary for the plaintiff to allege *either* the loss of particular customers by name, *or* a general diminution in its business, and extrinsic facts showing that such special damages were the natural and direct result of the false publication. If the plaintiff desire[s] to predicate its right to recover damages upon general loss of custom, it should . . . [allege] facts showing an established business, the amount of sales for a substantial period preceding the publication, and amount of sales subsequent to the publication, facts showing that such loss in sales were the natural and probable result of such publication, and facts showing the plaintiff could not allege the names of particular customers who withdrew or withheld their custom." '

*Id.* at 244 (quoting *Testing Systems,* 251 F.Supp. at 291 (citation omitted)) (emphasis added).

---

**2.** Defendants only raise KBT's failure to make sufficient allegations of time in the context of

The only allegation of damage contained in Count I is that "[a]s a result of the false and fraudulent reports, plaintiffs did suffer and continue to suffer lost revenues from a reduction in advertising contracts on [WHAT] and from the refusal of new prospective advertisers to do business with plaintiffs." Compl., ¶ 35. We agree with Defendants that such an allegation falls well short of KBT's pleading burden under Rule 9(g). We have highlighted the disjunctive construction of the paragraph quoted above, however, to make clear that KBT's burden is not quite as stringent as Defendant contends. We grant KBT twenty (20) days leave to amend Count I to comply with the standard as articulated in *Forum Publications.*

#### D. Allegations of Time

Defendants argue that KBT's trade disparagement claim is deficient because KBT fails to allege when the statements were made. *See* Fed.R.Civ.P. Rule 9(f) ("For the purpose of testing the sufficiency of a pleading, averments of time and place are material and shall be considered like all other averments of material matter."). KBT responds that its allegation that Defendants' reports are published "quarterly" is sufficient. We disagree. KBT must plead the dates of the allegedly disparaging statements with sufficient specificity to allow Defendants to raise applicable defenses such as the statute of limitations. *See Simcox v. National Rolling Mills, Inc.,* 1990 WL 74356, *2 (E.D.Pa. June 4, 1990); *see generally* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1309, at 698–99 (2d ed.1990). The Complaint must also be amended in this regard within the twenty (20) days leave we grant today.[2]

*Count Two: Intentional Interference with Prospective Business Relationships*

In order to state a claim for intentional interference with prospective business (or contractual) relations under Pennsylvania law, a plaintiff must allege:

  (1) a prospective contractual relation;

---

Count I. We therefore do not consider this issue with respect to KBT's five other claims.

(2) the purpose or intent to harm the plaintiff by preventing the relation from occurring;

(3) the absence of privilege or justification on the part of the defendant; and

(4) the occasioning of actual damage resulting from the defendant's conduct.

*U.S. Healthcare,* 898 F.2d at 925. A prospective contractual relation is a reasonable probability of a contract, i.e. "something less than a contractual right, [but] something more than a mere hope." *Alvord–Polk, Inc. v. F. Schumacher & Co.,* 37 F.3d 996, 1015 (3d Cir.1994) (quoting *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 412 A.2d 466, 471 (1979)); *see also Glenn v. Point Park College,* 441 Pa. 474, 272 A.2d 895, 898–99 (1971). In addition, a plaintiff must allege that the interference was not privileged. *See id.* 272 A.2d at 899; *Cloverleaf Development v. Horizon Financial,* 347 Pa.Super. 75, 500 A.2d 163, 167–68 (1985).

■ The pertinent allegations of the Complaint are that Defendants have wilfully under-reported the extent of WHAT's listening audience in publications that advertisers rely on in making 90% of their time-purchase decisions. As a result, "new prospective advertisers" have refused "to do business with [Plaintiffs]," causing KBT to lose revenue. Compl., ¶ 38. We reject Defendants' argument that these allegations do not adequately aver a prospective relation. Though KBT has identified no specific prospective advertisers in its Complaint, it has alleged the existence of a mechanism that would bring in new business on a regular basis. *See Posner v. Lankenau Hosp.,* 645 F.Supp. 1102, 1112 (E.D.Pa.1986) (claim based on alleged interference with referral and/or consultation patterns at hospital); *Advanced Power Systems, Inc. v. Hi–Tech Systems, Inc. et al.,* 1992 WL 97826, *11 (E.D.Pa. Apr.30, 1992) (dismissing claim where plaintiff "failed either to identify particular potential customers or to allege the existence of a mechanism that would routinely bring it new customers"). But for Defendants' alleged wilful interference with this mechanism, KBT claims that it would have attracted new advertisers. Whether or not this expectation was merely the product of "the innate optimism of [a] salesman,"

*Thompson Coal,* 412 A.2d at 471, is not a question to be addressed on a motion to dismiss. Of course, KBT must ultimately have specific proof of the reasonableness of this expectation to recover at trial. *See Alvord–Polk Inc.,* 37 F.3d at 1015; *Posner,* 645 F.Supp. at 1112 n. 6.

We also disagree with Defendants' contentions that KBT has not pled the absence of privilege. The allegation that Defendants' conduct was not privileged is implicit in KBT's allegations that Defendants wilfully published unreliable data based on racially biased methodology. *See Barmasters Bartending School, Inc. v. Authentic Bartending School, Inc.,* 931 F.Supp. 377, 386 (E.D.Pa. 1996) ("Whether a defendant is privileged or justified in a particular course of conduct is defined by 'the rules of the game,' or the 'area of socially acceptable conduct which the law regards as privileged.' ") (quoting *Glenn,* 272 A.2d at 899). Finally, KBT's allegation that it lost revenue from the refusal of new advertisers to purchase time on WHAT sufficiently alleges damage. Accordingly, the Motion to Dismiss is denied with respect to Count Two.

*Count Three: Interference With Business Relationships*

The Supreme Court of Pennsylvania has adopted Restatement (Second) of Torts § 766 (1979), which provides:

One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the third person's failure to perform the contract.

*U.S. Healthcare,* 898 F.2d at 925 (citing *Adler, Barish, Daniels, Levin and Creskoff v. Epstein,* 482 Pa. 416, 393 A.2d 1175, 1183 (1978)). As a threshold matter, a contract right must be established. *U.S. Healthcare,* 898 F.2d at 925 (citing *Thompson Coal Co.,* 412 A.2d at 471).

■ Defendants argue that this claim must be dismissed because KBT has failed to plead the existence of any contract with a

third party. KBT responds that it has set forth the information necessary to outline the elements of this claim by "specifically alleg[ing] a loss of current contracts" in paragraphs 26, 33, 40 and 46 of its Complaint. We disagree. Reading the Complaint as a whole and these paragraphs in particular in the light most favorable to KBT, we find no allegation that meets even KBT's threshold burden of alleging a contract right. Paragraph 46, which actually is not included in Count Three either directly or by reference, comes closest by alleging in pertinent part that Plaintiffs "did suffer and continue to suffer lost revenues from a reduction in advertising contracts on [WHAT]" as a result of Defendants' reports.[3] We do not construe the word "reduction" to mean "breach" in this context as this paragraph appears simply to allege a decrease in the total number of advertising contracts for WHAT air time. We grant twenty (20) days leave to amend so KBT may allege a contract right with which Defendants wrongfully interfered, if indeed KBT can make such a claim.

*Count Four: Common Law Fraud*

Under the Federal Rules of Civil Procedure, a claim of fraud must be pled with particularity. *See* Fed.R.Civ.P. 9(b). Thus, our Court of Appeals has instructed that "Rule 9(b) requires a plaintiff to plead (1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damage." *Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 285 (3d Cir.1992).

■ Defendants' argument for dismissal of KBT's common law fraud claim concerns the fourth and fifth elements of the prima facie case. Defendants contend that, accept-ing KBT's allegations as true, it is the *advertisers* (1) whom Defendants intended to act on their statements and (2) who did in fact act on them, not to their own damage, but to KBT's. Thus, Defendants argue that KBT may not assert a fraud claim under its own theory because Defendants did not intend KBT to act on their statements, nor did KBT act to its own damage. If, in fact, Defendants' statements were fraudulent, only the advertisers would have a claim, and only to the extent that the advertisers themselves incurred damage.

KBT's response to this argument is not convincing. KBT notes its allegation at paragraph 14 that it was among the broadcasters to whom Defendants' reports were distributed. Still, we find no allegation that Defendants intended by their statements to induce KBT to act and that KBT suffered damages as a proximate result. In short, Count Five clearly seeks damages caused by the advertisers' actions. If KBT does wish to claim that Defendants intended KBT to act upon their statements and KBT suffered damages as a proximate result, it has twenty days to amend its Complaint accordingly.

*Count Five: Negligence*

■ KBT does not specify the negligence theory under which it seeks to recover in Count Five, but we agree with Defendants that the allegations must be construed to state a claim for negligent interference with business relations and/or prospective business relations. Defendants argue that such a claim must fail because KBT seeks only economic damages, i.e. lost revenue from a "reduction in advertising contracts on [WHAT] and from the refusal of new prospective advertisers to do business with plaintiffs." Compl., ¶ 52. Defendants cite *Aikens v. Baltimore and Ohio Railroad Company*, 348 Pa.Super. 17, 501 A.2d 277 (1985), in this regard. In response, KBT simply refers the

---

**3.** The other paragraphs identified by KBT provide as follows. Paragraph 26 alleges in pertinent part that "ratings decline had a direct and negative impact on the amount of advertising time purchased from these stations' [sic] and therefore, upon the level of revenue received by [KBT]."

Paragraph 33 alleges that Defendants "specifically intended to cause pecuniary loss to plain-tiffs and reasonably should have recognized that defendants' disparaging publications with respect to plaintiffs' Station would result in pecuniary loss to the plaintiffs."

Paragraph 40 alleges that "[b]y engaging in the tortious conduct set forth above, the defendants did knowingly, wilfully and intentionally interfere with plaintiffs' business relationships."

Court to the allegations of its Complaint and asserts that it has "adequately pled a claim of negligence." Pls.' Mem. at 24. We find *Aikens* to be directly on point, however, and dismiss this claim accordingly. *See also In re One Meridian Plaza Fire Litigation,* 820 F.Supp. 1460, 1483–84 (E.D.Pa.1993).

*Count Six: Punitive Damages*

Defendants argue that KBT's punitive damages claim must be dismissed because the Complaint fails to state a claim upon which relief may be granted. *See Kirkbride v. Lisbon Contractors, Inc.,* 521 Pa. 97, 555 A.2d 800, 802 (1989) ("If no cause of action exists, then no independent action exists for a claim of punitive damage since punitive damages is only an *element* of damages.") (emphasis in original). Because we have refused to dismiss one claim and granted leave to amend three others, the Motion to Dismiss must be denied as to Count Six.

**CONCLUSION**

For the foregoing reasons, we grant the Motion to Dismiss as to Count Five of the Complaint and all claims of Plaintiff Anderson; deny the Motion as to Count Two and Count Six; and grant twenty (20) days leave to amend Count One, Count Three and Count Four. An appropriate Order follows.

**ORDER**

AND NOW, this 2nd day of June, 1997, upon consideration of Defendants' Motion to Dismiss Pursuant to Rules 12(b)(6), 9(b) and 9(g) of the Federal Rules of Civil Procedure, or Alternatively, Motion to More Definite Statement Pursuant to Rules 9(f), 9(g) and 12(e) of the Federal Rules of Civil Procedure, and Motion to Dismiss Plaintiffs' Claim for Punitive Damages (Document No. 3), Plaintiffs' response, and Defendants' reply thereto, it is hereby ORDERED in accordance with the attached Memorandum that Defendants' Motion is GRANTED in PART and DENIED in PART as follows:

(1) that the Motion is GRANTED as to Count Five of the Complaint and all claims of Plaintiff W. Cody Anderson and these claims are hereby DISMISSED;

(2) that the Motion is DENIED as to Plaintiff KBT Corporation, Inc.'s claims in Count Two and Count Six;

(3) that Plaintiff KBT Corporation, Inc. is granted twenty (20) days from the date of entry of this Order to AMEND Counts One, Three and Four or these claims shall be dismissed.