**BRUNSON COMMUNICATIONS, INC.,**

v.

**ARBITRON, INC.**

**Civil Action No. 02–3223.**

United States District Court,
E.D. Pennsylvania.

June 10, 2003.

**378**

Heather R. Brinton, Sugarman and Associates, Robert J. Sugarman, Philadelphia, PA, for Plaintiff.

Bruce Bellingham, David B. Picker, Spector, Gadon & Rosen PC, Philadelphia, PA, Alfred Fabricant, Marc Lieberstein, Ostrolenk, Faber, Gerb & Soffen LLP, New York City, for Defendant.

## MEMORANDUM

BAYLSON, District Judge.

On December 31, 2002, this Court issued an Order dismissing the Amended Complaint of Brunson Communications, Inc. (herein "Plaintiff") against Arbitron, Inc. ("Defendant"). Finding that five of the seven counts contained in the Amended Complaint failed to state a claim upon which relief could be granted—under any set of facts that could be proved by Plaintiff—this Court dismissed those five claims with prejudice. As to the two remaining counts, which involved claims of Disparagement of Commercial Products and Negligence, this Court found Plaintiff's allegations legally inadequate, but permitted Plaintiff to file a Second Amended Complaint.

Presently before the Court is Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6). Accordingly, this Court must determine whether Plaintiff's latest amended pleading states sufficient facts to sustain either, or both, of the two causes of action remaining in this case.

### I. Relevant Procedural History [1]

Plaintiff filed its original Complaint on May 24, 2002, asserting seven distinct

---

1. A more complete procedural history of this case is set forth in this Court's December 31,

causes of action: Sherman Act antitrust violations, unfair competition under the Lanham Act, disparagement of commercial products, tortious interference with prospective contractual relations, negligence and promissory estoppel. After Defendant moved for dismissal, Plaintiff filed an Amended Complaint. Defendant then filed a Motion to Dismiss the Amended Complaint, for failure to state a claim upon which relief could be granted. On December 31, 2002, this Court granted the motion, dismissed five of the claims with prejudice, and dismissed the disparagement and negligence claims without prejudice to Plaintiff's right to file a Second Amended Complaint.

After moving for reconsideration, which this Court denied, Plaintiff filed its Second Amended Complaint ("Sec.Am.Comp.") on March 3, 2003, reasserting claims for disparagement of commercial products and negligence.[2] Defendant filed the present Motion to Dismiss on April 2, 2003, and Plaintiff filed its response on April 30, 2003. Subsequently, on May 7, 2003, Plaintiff filed a Motion for Leave to Amend its pleading. Defendant then filed a Reply Memorandum in Support of its Motion, on May 15, 2003, as well as a Memorandum in Opposition to the Motion for Leave to Amend, on May 27, 2003.

## II. *Legal Standard*

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court may look only to the facts alleged in the complaint and its attachments. *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). The Court must accept as true all well pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. *Angelastro v. Prudential–Bache Sec., Inc.,* 764 F.2d 939, 944 (3d Cir.1985). A Rule 12(b)(6) motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff. *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988).

## III. *Allegations of the Second Amended Complaint*

Plaintiff alleges the following facts, which, for the purpose of deciding the instant motion, will be viewed in the light most favorable to Plaintiff. Plaintiff is the owner of Channel 48, WGTW–TV, a small non-network television station serving the Philadelphia area. Sec. Am. Comp. ¶ 5. Defendant Arbitron is in the business of developing and operating measurement systems to monitor radio listeners and television viewers, to serve various industries, including the advertising industry. *Id.* at ¶ 9. Defendant has developed a new technology for measuring television viewership, known as the personal people meter ("PPM"). *Id.* at ¶ 10. In the words of Plaintiff's Second Amended Complaint, this PPM technology

> operates by embedding an inaudible signal in the transmitter of the various stations. It then places a receiving device on the person of individuals to detect and record when they are watching television sets tuned to only those stations whose signals which [*sic*] have been imbedded by Arbitron.

*Id.*

In the fourth quarter of 2001, Defendant began a "test" survey program to intro-

---

2002 Order. *Brunson Commun., Inc. v. Arbitron, Inc.,* 239 F.Supp.2d 550 (E.D.Pa.2002).

**2.** In the Second Amended Complaint, these two counts are numbered as Count I (Disparagement of Commercial Products) and Count VI (Negligence)—with no Counts in between. In the earlier Amended Complaint, these two causes of action were numbered Counts IV and VI, respectively.

duce its PPM technology into the Philadelphia market. *Id.* at ¶ 13–15. Defendant announced, in conjunction with its launching of the PPM test, that the survey would "accurately and creditably measure the performance of the entire market."[3] *Id.* at ¶ 15. This statement, Plaintiff claims, was "false and malicious," in that Defendant did not intend to include WGTW in the test. *Id.* at ¶ 17.

In order to measure a particular station's viewership, Defendant would have to install certain equipment at that station. Plaintiff alleges Defendant did not possess enough equipment to measure all stations in the Philadelphia market. According to the Second Amended Complaint, Defendant chose to omit Plaintiff's station from the PPM survey, despite the fact that WGTW's actual viewership is significant. *Id.* Moreover, Plaintiff alleges, Defendant embedded its PPM signal only in the transmitters of Plaintiff's competitors—the larger networks and cable systems—omitting Plaintiff's station from the PPM survey data. *Id.* Plaintiff claims that Defendant's motive in omitting Plaintiff was

> to obtain the benefits of working with the larger networks, plaintiff's competitors, who have most of the outlets in the markets. Therefore its pursuit of profits caused it to knowingly give preferential treatment to plaintiff's competitors and knowingly and [*sic*] exclude and subject to disparagement an independent non-network station that did not have the market power of the competitors.

*Id.* at ¶ 35.

According to Plaintiff, Defendant then began to release periodic PPM survey data to advertising agencies, advertisers, television stations and other media sources, representing that the data were complete and accurate. *Id.* at ¶ 25. By failing to in-

clude Plaintiff's station in the PPM test measurements, Plaintiff claims, Defendant impaired WGTW's ability to be competitive in the market for sales of advertising time, in that advertising agencies would be unable to confirm from the survey that WGTW had a measurable viewership. Sec. Am. Comp. ¶ 20, 26. Plaintiff further maintains that even if advertisers had recognized that WGTW was omitted from the PPM test data, such omission by Defendant "de-facto reduced WGTW's standing in the eyes of the persons and companies it must solicit to buy the station's product, i.e. viewership watching time." *Id.* at ¶ 28.

Despite knowing of the inaccuracy and incompleteness of its PPM test data, Defendant nevertheless persisted in promulgating two surveys. *Id.* at ¶¶ 30–31. Indeed, the Second Amended Complaint states that, when contacted by Plaintiff, Defendant acknowledged to Plaintiff that the data were flawed and could cause harm to WGTW, in that it "could not give a full picture of the market." *Id.* at ¶¶ 27, 32. Yet Defendant refused to correct the defect by reconstructing the PPM survey to include WGTW, prior to releasing the data. *Id.* at ¶ 29.

On May 20, 2002, at a meeting of the Pennsylvania Association of Broadcasters, Plaintiff alleges, Kevin Smith, a Senior Vice President of Arbitron, "knowingly and intentionally falsely represented that the survey was fair, accurate and complete." *Id.* at ¶ 32. Smith also stated, falsely, that, although there had been glitches in the PPM testing, these had been rectified. *Id.* at ¶ 33.

Though a PPM signal was eventually embedded in WGTW's transmitter, in April 2002, *id.* at ¶¶ 23–24, the PPM equipment failed to properly encode WGTW's

---

**3.** The Second Amended Complaint does not explain whether this particular alleged statement was made by Defendant within a press release or via some other medium.

signal, and Defendant failed to correct this defect, in violation of the "fiduciary duty it assumed," according to Plaintiff. *Id.* at ¶ 36. This resulted in the continued omission of WGTW from the PPM surveys until at least June 2002. *Id.* ¶ 24.

In its commercial disparagement count, Plaintiff asserts that Defendant's false statements as to the accuracy and completeness of its test surveys caused substantial pecuniary loss to Plaintiff, in that prospective advertisers would conclude from the data that WGTW's viewership was "so insignificant as not to warrant either inclusion in the survey or recognition of the exclusion, as was foreseen by the defendant." Sec. Am. Comp. ¶ 43. Plaintiff does not plead any specific amount or type of damages actually caused by this alleged disparagement.

In its negligence count, Plaintiff asserts that, because of the potential damage to a smaller station that omission from such surveys could cause, Defendant had a duty at law, to either include Plaintiff's station in the measurements, or refrain from representing its surveys as accurate and inclusive. *Id.* ¶ 45. Moreover, Plaintiff claims that Defendant breached this duty by commencing its PPM testing program without adequate equipment, by knowingly omitting Plaintiff, and by representing to the advertising industry and the public that the surveys were a comprehensive and representative measurement of the television viewership in the Philadelphia area. *Id.* ¶ 46.

## IV. *Sufficiency of the Second Amended Complaint*

Defendant moves for dismissal of both counts, for failure to state a claim upon which relief can be granted.

### A. *Disparagement of Commercial Products*

The Court of Appeals for the Third Circuit has recently predicted that the Pennsylvania Supreme Court would adopt a Restatement of Torts section regarding commercial disparagement. *Neurotron Inc. v. Medical Serv. Ass'n of Pa.,* 254 F.3d 444, 449 (3d Cir.2001). That Restatement section, § 623A, provides that:

> One who *publishes a false statement harmful to the interests of another* is subject to liability for *pecuniary loss* resulting to the other if
>
> (a) he *intends* for publication of the statement to result in harm to interests of the other having a pecuniary value, *or* either recognizes or should *recognize that it is likely* to do so, *and*
>
> (b) he *knows* that the statement is *false* or acts in *reckless disregard* of its truth or falsity.

Restatement (Second) of Torts § 623(A) (1977) (emphasis added).

The *Neurotron* court found that Pennsylvania's highest court would accept § 623(A) as the "most reliable collation of the common law of injurious falsehood." *Id.* at 451. *See also Brunson Commun., Inc. v. Arbitron, Inc.,* 239 F.Supp.2d 550, 576 (E.D.Pa.2002) (earlier opinion in the present case discussing the *Neurotron* precedent and the modern law of commercial disparagement). Notably, the Pennsylvania Supreme Court has recently cited Restatement § 623(A). *Pro Golf Mfg. v. Tribune Rev. Newsp. Co.,* 809 A.2d 243, 246 (Pa.2002). *See also Brunson,* 239 F.Supp.2d at 577 (discussing *Pro Golf* case).

█ Thus, to sustain its cause of action for commercial disparagement, Plaintiff must allege, 1.) that Defendant made a false statement, which caused pecuniary loss to Plaintiff, 2.) that Defendant intend-

ed for publication of the statement to result in harm to Plaintiff's pecuniary interests, or either recognized or should have recognized that it was likely to do so, and 3.) that Defendant knew that the statement was false or acted in reckless disregard of its truth or falsity.

■ Plaintiff alleges that Defendant announced, in conjunction with its launching of the PPM test, that the survey would "accurately and creditably measure the performance of the entire market," when, in fact, the survey omitted WGTW entirely. Sec. Am. Comp. at ¶ 15. Further, according to Plaintiff, Kevin Smith, a Senior Vice President of Arbitron, speaking at an industry meeting, "knowingly and intentionally falsely represented that the survey was fair, accurate and complete." *Id.* at ¶ 32. Plaintiff's theory is that these statements were false, and damaging to Plaintiff, in that prospective advertisers would conclude from the data that WGTW's viewership was "so insignificant as not to warrant either inclusion in the survey or recognition of the exclusion, as was foreseen by the defendant." Sec. Am. Comp. ¶ 43.

Under notice pleading, these allegations fulfill the requirement of a "false statement," the requirement that Defendant should have recognized the potential harm the statement could cause, and the requirement that Defendant knew the statement was false or acted in reckless disregard of its truth or falsity. Restatement (Second) of Torts § 623(A). Although Plaintiff does not allege that Defendant made any statements *directly referring to WGTW*, this Court concludes that Plaintiff has made out a disparagement case strong enough to withstand the present motion to dismiss. While Defendant may not have expressly mentioned WGTW in any of its statements, Plaintiff may, nevertheless, be able to prove that the total effect of Defendant's various statements and actions was to disparage Plaintiff's business—and to reduce WGTW's standing in the eyes of the persons and companies it must solicit to buy the station's product. Sec. Am. Comp. ¶ 28.

However, as noted above, Plaintiff has not specifically identified a pecuniary loss resulting from the allegedly false statements. Rule 9(g) provides that "[w]hen items of special damage are claimed, they shall be specifically stated." Fed.R.Civ.P. 9(g). This Court has previously held that, to successfully plead a cause of action for disparagement, a plaintiff must allege

facts showing an established business, the amount of sales for a substantial period preceding publication, and amount of sales subsequent to the publication, facts showing that such loss in sale were the natural and probable result of such publication, and the facts showing the plaintiff could not allege the name of particular customers who withdrew or withheld their custom.

*Forum Publications, Inc. v. P.T. Publishers, Inc.*, 700 F.Supp. 236, 244 (E.D.Pa. 1988).

In *Forum Publications*, the defendants moved for dismissal of the plaintiff's disparagement claim for failure to plead damages with particularity. The plaintiff asserted that it had adequately pled damages by alleging that its total loss was "in an amount in excess of $75,000." *Id.* The Court found that such statement did not satisfy the requirement that special damages be pled with specificity in disparagement actions. *Id.* However, the Court permitted the Plaintiff to amend its complaint within twenty days to adequately plead special damages. *Id.See also KBT Corp., Inc. v. Ceridian Corp.*, 966 F.Supp. 369, 375 (E.D.Pa.1997) (granting plaintiff twenty days leave to amend in order to "comply with the standard as articulated in *Forum Publications* ").

In the case at bar, Plaintiff does not allege a general decline in business, much less a specific type of pecuniary loss. However, because the allegedly disparaging statements were made approximately one year ago, Plaintiff should now be able to readily determine and specifically allege the type and extent of its economic damages. *See* Plaintiff's Motion for Leave to Amend at ¶ 4 (suggesting that "now that a year has passed," Plaintiff may be able to "quantitatively assess the actual damage"). Therefore, this Court will dismiss Plaintiff's commercial disparagement claim without prejudice to Plaintiff's right to file a Third Amended Complaint within twenty days, alleging facts showing specific types and amounts of damages, such as alleging the amount of sales for a substantial period preceding Defendant's statements, and the amount of sales subsequent to Defendant's statements, and also alleging specific facts showing that such losses in sales were the natural and probable result of Defendant's statements.

## B. *Negligence*

 Defendant also argues that Plaintiff's negligence claim must be dismissed for failure to state a claim upon which relief can be granted. Under Pennsylvania law, a negligence claim consists of four elements:

> (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another.

*Kleinknecht v. Gettysburg College,* 989 F.2d 1360, 1366 (3d Cir.1993). The first of these elements, the existence of a duty recognized by law, raises a purely legal issue. *Id.* If this Court determines that, based on the facts alleged in the Second Amended Complaint, Plaintiff cannot establish a legal duty owed to Plaintiff by Defendant, this Court need not consider whether the other three elements are successfully pled. *See e.g., Carlson v. Arnot–Ogden Mem. Hosp.,* 918 F.2d 411, 417 (3d Cir.1990) (affirming dismissal of negligence claim because hospital owed prospective employee no duty to ascertain whether he was fully qualified for position offered).

This Court cannot conclude that Defendant owed a legal duty of care to Plaintiff under the circumstances set forth in the Second Amended Complaint. While Plaintiff has cited numerous Pennsylvania negligence cases in its brief, not one of the cases cited establishes the formation of a duty based upon the type of business activity involved in this case. For instance, Plaintiff relies heavily on *Sharpe v. St. Luke's Hosp.,* 821 A.2d 1215 (2003), which recognized that a hospital had a duty of care in connection to its collection of the plaintiff's urine for drug testing purposes, where inaccurate test results resulted in the plaintiff's termination from employment. While the theory underlying the legal duty of care in *Sharpe* was based on the relationship between the hospital and the plaintiff, in the case at bar Plaintiff has not articulated a basis for imposing a duty of care upon Defendant.

Assuming that Defendant could have foreseen some harm to Plaintiff, resulting from its omission of WGTW from the surveys, from its representations as to the completeness of those surveys, or from its failure to assure proper encoding of WGTW's signal, such potential harm can only be characterized as economic. It is well established in the Pennsylvania case law that a plaintiff cannot recover on a negligence theory for purely economic damages. *David Pflumm Paving & Exca-*

*vating, Inc. v. Foundation Services Co.,* 816 A.2d 1164, 1168 (Pa.Super.2003); *Aikens v. Baltimore & Ohio R.R. Co.,* 348 Pa.Super. 17, 501 A.2d 277, 278 (1985).

In the recent *Foundation Services* case, the Superior Court explained the justifications underlying this "economic loss doctrine." 816 A.2d at 1168.

> This Court has consistently denied negligence claims that cause only economic loss. In *Aikens v. Baltimore and Ohio Railroad Company,* 348 Pa.Super. 17, 501 A.2d 277 (1985), employees of a plant damaged by a train derailment filed a lawsuit against the railroad for lost wages. This Court held that "no cause of action exists for negligence that causes only economic loss." *Id.* at 279. The Court reasoned that
>
> > negligent harm to economic advantage alone is too remote for recovery under a negligence theory. The reason a plaintiff cannot recover stems from the fact that the negligent actor has no knowledge of the contract or prospective relation and thus has no reason to foresee any harm to the plaintiff's interest.
>
> *Id.* (citations omitted). The Court added that "allowance of a cause of action for negligent interference with economic advantage would create an undue burden upon industrial freedom of action, and would create a disproportion between the large amount of damages that might be recovered and the extent of the defendant's fault." *Id.* (citation omitted).
>
> > To allow a cause of action for negligent cause of purely economic loss would be to open the door to every person in the economic chain of the negligent person or business to bring a cause of action. Such an outstanding burden is clearly inappropriate and a danger to our economic system

> > ... [Extending negligence liability to embrace purely economic loss] would clearly lead to problems in consistency and foreseeability, and could be harmful in scope.
>
> *Id.*

*Foundation Services,* 816 A.2d at 1168–69.

While, in the instant case, Plaintiff has not asserted any actual damages sustained as a result of the claimed negligent conduct, the only type of damages that Plaintiff could plausibly allege would be economic in nature, namely, lost profits from declining sales of WGTW advertising time. *See KBT Corp., Inc. v. Ceridian Corp.,* 966 F.Supp. 369, 377 (E.D.Pa.1997) (dismissing negligence claim by owner of radio station against Arbitron Company and its parent, because owner sought only economic damages, i.e. lost advertising revenue, where plaintiff alleged defendants had compiled surveys using a method they knew to be biased and unreliable, and had therefore knowingly published false and misleading information regarding listening patterns of Philadelphia's African–American community generally and of plaintiff's station's audience in particular).

Plaintiff cannot establish that Defendant owed Plaintiff a duty of care recognized by law, based upon the liberally-interpreted allegations of the Second Amended Complaint. Therefore, Plaintiff's Negligence claim must be dismissed with prejudice.

## V. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) will be granted; Plaintiff's Negligence claim will be dismissed, with prejudice; Plaintiff's Disparagement of Commercial Products claim will be dismissed, without prejudice to Plaintiff's right to file a Third Amended

Complaint within twenty days; and Plaintiff's Motion for Leave to Amend will be denied as moot. An appropriate Order follows.

### ORDER

AND NOW, this day of June, 2003, it is hereby ORDERED that:

1. The Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) is GRANTED;

2. The Plaintiff's claim for Negligence is dismissed, with prejudice;

3. The Plaintiff's claim for Disparagement of Commercial Products is dismissed without prejudice to Plaintiff's right to file a Third Amended Complaint within twenty days; and

4. The Plaintiff's Motion for Leave to Amend is DENIED as moot.